IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RANDY BINNING                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:16-CV-00146-NBB-RP

BALLY GAMING, INC.;
CAESARS ENTERTAINMENT CORPORATION;
THE MISSISSIPPI GAMING COMMISSION;
AMESHA GROSS; and VARIOUS UNKNOWN
CURRENT AND FORMER EMPLOYEES of the
MISSISSIPPI GAMING COMMISSION                                               DEFENDANTS

MEMORANDUM OPINION

Presently before the court are the defendants' motions for summary judgment. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

Facts and Procedural Background

The plaintiff, Randy Binning, is a professional gambler from Las Vegas, Nevada. In April of 2013, Binning's colleague, Rande Thorpe, called and advised that certain "My Poker" keno games designed by Defendant Bally Gaming, Inc. ("Bally") were providing pay outs five times higher than usual. These high payouts could only be achieved by using a particular betting sequence that involved switching denominations. Thorpe further advised that these particular machines were available at casinos in Joliet, Illinois, and Tunica, Mississippi.

Although Binning admits that he was not typically a keno player, he nonetheless sought out these machines. Initially, Binning played the keno games available in Las Vegas, but failed to obtain the desired high payouts. Consequently, he traveled first to Illinois and played keno over a span of two to three weeks, winning close to $200,000. Binning then stored his winnings in a safety deposit box at an Illinois bank and set out for Mississippi. While in Mississippi,

Binning played keno for just a few days and won approximately $150,000. Binning departed Mississippi quickly so that his actions would not be discovered by casino personnel.

On April 24, 2013, Harrah's employees became aware of the unusual activity related the keno machines and, consistent with Mississippi gaming law, notified Defendant Mississippi Gaming Commission ("MGC"). Harrah's informed MGC that it was unsure whether the unusually high payouts were a result of any illegal activity or whether the gaming software was simply malfunctioning. The following day, Harrah's notified Bally of the unusual activity.

On April 29, 2013, Binning was stopped for a traffic violation in Arizona while en route back to Las Vegas. After a K-9 alerted twice, officers found $406,000 stashed in various places throughout Binning's car. Officers then seized the money, believing it to be either proceeds of illegal drug trafficking or theft because Binning could not provide any documentation for his contention that he won the money at the casinos. Once the forfeiture proceedings were initiated, an Arizona judge found probable cause as to theft under both Mississippi and Illinois statutes.

Arizona officials interviewed Binning about his activity in Illinois and Mississippi. Binning told the officers that he had won the money playing keno and explained that he utilized a particular sequence of switching the denominations back and forth to increase the payouts. Although he had a Players Advantage Card which he normally used when playing at Harrah's casinos, Binning chose not to use it while playing keno because he did not want to be identified. He further stated that he intentionally kept his keno jackpots under $1,200 because jackpots over that amount required a patron to show identification and get an IRS W-2g form. Binning also kept transactions below the $3,000 threshold for electronic payouts to avoid contact with casino personnel by cashing out his winnings at an electronic kiosk. Binning additionally characterized his behavior as an effort "to be deceptive."

Back in Mississippi, MGC Agent Amesha Gross traveled to Tunica and, after viewing video surveillance, learned how to duplicate the sequence utilized by Binning to increase the payouts. She then viewed the affected machines, transaction reports, accounting paperwork, and Ticket In/Ticket Out vouchers. Gross also interviewed two persons of interest, Leland Sharpe and Tommy Bryant. Sharpe and Bryant told Gross that Binning had taught them the keno "scam" in exchange for thirty percent of their winnings. Further, Gross watched the video interview of Binning in Arizona and coordinated with Illinois officials.

After concluding her investigation, Gross believed that Binning had violated a Mississippi statute which makes it a crime "to manipulate with the intent to cheat, any component of a gaming device in a manner contrary to the designed and normal operational purpose of the component." *See* Miss. Code Ann. § 75-76-301(g). Gross accordingly submitted an affidavit in support of an arrest and a warrant for Binning's arrest was issued by a Tunica County justice court judge on June 27, 2013.

During this time, Bally had been conducting its own investigation. On July 24, 2013, almost a month after the warrant for Binning's arrest was issued, Bally submitted its Summary of Findings to MGC. In its report, Bally advised it had determined that one cause of the unusually high payouts was an inadvertent "coding error" in the keno software that could be exploited. Bally did not mention Binning nor did it reference any illegal activity.

Binning was arrested pursuant to the aforementioned warrant on January 4, 2014. Nearly a month later, on February 3, 2014, a grand jury in the Circuit Court of Tunica County, Mississippi, indicted Binning for violating Mississippi gaming law. However, on June 30, 2015, the circuit court dismissed the charges against Binning, finding it was unable to conclude that his actions "constitute[d] criminal acts under Mississippi law," and pointing to the dismissal of similar charges that had been filed against Binning in Illinois.

Binning filed the instant suit on June 27, 2016. He asserts a state law claim for malicious prosecution against defendants MGC, Gross, Bally and Caesars Entertainment Corporation ("Caesars"). Binning further asserts a constitutional claim under 42 U.S.C. §1983 for unlawful arrest against Gross. The court previously denied the defendants' motions to dismiss. Defendants now move for summary judgment and argue that they are entitled to judgment as a matter of law.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "Unsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324). Further, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 457 U.S. at 587.

"Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

In moving for summary judgment, Defendants MGC and Gross, in her official capacity, contend that they are immune from suit pursuant to the Eleventh Amendment. Defendant Gross additionally argues that she is entitled to qualified immunity on Binning's §1983 claim. Further, all defendants assert that Binning has failed to establish elements necessary to his claim for malicious prosecution.

*Eleventh Amendment Immunity*

The Eleventh Amendment provides, in pertinent part, that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This immunity has been further extended to protect state agencies when that agency is "an arm of the state," and state officers acting in their official capacities. *See McCarthy v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004); *Daigle v. Gulf State Utilities Co., Local Union Number 2286, et al.*, 794 F.2d 974, 980 (5th Cir. 1986).

In response to Defendants' immunity argument, Binning asserts that he has brought no federal claims against MGC. While this assertion is true, it matters not because Eleventh Amendment immunity bars both federal and state law claims asserted in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21 (1984); *see also Moore v. Mississippi Gaming Comm'n*, 2015 WL 13019615, *2 (N.D. Miss. Nov. 2, 2015); *Mississippi Surplus Lines Ass'n v. Mississippi*, 384 F. Supp. 2d 982, 985 (S.D. Miss. 2005). Binning

5

additionally contends that the State of Mississippi has explicitly waived its immunity within the Mississippi Tort Claims Act ("MTCA"). The MTCA, however, unequivocally provides that "nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment." Miss. Code Ann. § 11-46-5(4). The court also notes that Binning does not dispute that Defendant MGC is an arm of the state nor that Gross, as an MGC agent, was working in her official capacity at all relevant times. *See Moore v. Mississippi Gaming Comm'n*, 2016 WL 5477673 *10 (N.D. Miss. Sept. 29, 2016); *Sullivan v. Boyd Tunica, Inc.*, 2007 WL 541619 (N.D. Miss. Feb. 16, 2007).

For these reasons, the court finds that Defendants MGC and Gross are entitled to Eleventh Amendment immunity. Accordingly, the court finds that Binning's claims against Defendants MGC and Gross, in her official capacity, should be dismissed.

*Qualified Immunity*

Defendant Gross additionally argues that she is entitled to qualified immunity on Binning's §1983 claim for unlawful arrest. Section 1983 authorizes suits against any individual who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. §1983. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to rebut the defense as courts do "not require that an official demonstrate that he did not violate clearly established federal rights," rather, "our precedent places that burden upon the plaintiffs." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

When qualified immunity has been asserted, as has been done here, the court must make two determinations. First, the court must determine whether the plaintiff has produced sufficient evidence to raise a genuine issue of material fact suggesting that the defendant's conduct violated an actual constitutional right. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). If so, the court must then consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* (citing *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

At the outset, the court must note that Binning's response completely fails to address Gross' qualified immunity argument. Despite this deficiency, the court will consider the merits of Gross' asserted defense. It is well-settled that the right to be free from an unlawful arrest is a clearly established constitutional right. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998). No violation of the right to be free from an unlawful arrest has occurred, however, when it is supported by probable cause. *Sorenson*, 134 F.3d at 328. Further, when an arrest is made under the authority of a properly issued warrant, "the arrest is simply not [an unlawful] arrest." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (citing *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977)).

Moreover, the independent intermediary doctrine provides that if the facts supporting an arrest are put before an intermediary such as a grand jury, the intermediary's decision to return an indictment "breaks the causal chain and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553(5th Cir. 2016) (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith*, 670 F.2d at 526)). The doctrine applies "even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never

7

convicted of any crime." *Id.* (citing *Russell v. Altom*, 546 F. App'x 432, 434 (5th Cir. 2013); *Taylor v, Gregg*, 36 F.3d 453, 455, 456-57 (5th Cir. 1994)). The doctrine is inapplicable *only* when "it can be shown that the deliberations of [the] intermediary were in some way tainted by the actions of the defendant." *Hand*, 838 F.2d at 1428. The burden is placed upon the plaintiff to show that the defendant's actions tainted the intermediary's deliberations. *See Jennings v. Patton*, 644 F.3d 297, 301 (5th Cir. 2011).

In the instant case, the record demonstrates that a warrant for Binning's arrest was issued by a Tunica County justice court judge. Binning does not allege nor does the record suggest any impropriety in the issuance of that warrant. The record further demonstrates that a Tunica County grand jury returned an indictment against Binning. Binning does not allege that Gross presented false or misleading information to the grand jury nor does the record contain any evidence indicating that the grand jury proceedings were tainted by Gross' actions.

In addition to the aforementioned issuance of an arrest warrant and return of an indictment, Gross conducted a thorough investigation of Binning's actions. Her investigation included traveling to the casinos, viewing video surveillance, learning how to duplicate the sequence used by Binning to manipulate the keno games, interviewing accomplices, and coordinating with authorities in Illinois and Arizona. Further, the statute under which Gross swore out an affidavit for Binning's arrest has never been construed by a Mississippi appellate court and, consequently, Gross had no guidance as to what actions were necessary to constitute a violation.

In sum, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Based on the foregoing discussion, the court finds that Binning has failed to carry

his heavy burden in demonstrating that Gross violated any of his clearly established constitutional rights. The court, therefore, finds that Gross is entitled to qualified immunity and that Binning's §1983 claim for unlawful arrest should be dismissed.

*State-Law Claim for Malicious Prosecution*

To establish a claim for malicious prosecution under Mississippi law, the plaintiff must prove the following six elements by a preponderance of the evidence:

(a) The institution of a proceeding,
(b) By, or at the insistence of the defendant,
(c) The termination of such proceedings in the plaintiff's favor,
(d) Malice in instituting the proceedings,
(e) Want of probable cause for the proceedings, and
(f) The suffering of injury or damage as a result of the prosecution.

*Condere Corp. v. Moon*, 880 So.2d 1038, 1042 (Miss. 2004). "Malicious prosecution suits are not favored [and] must be 'managed with great caution.'" *Croft v. Grand Casino, Inc.*, 810 So.2d 66, 72 (Miss. Ct. App. 2005) (quoting *State ex rel. Foster v. Turner*, 319 So.2d 233, 235 (Miss. 1975)).

Defendants Caesars and Bally contend that Binning cannot prove the tort's second element—that the criminal proceedings against him were "by, or at their insistence." To impose liability against Defendants, "there must be some affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution . . . ." *Downtown Grill, Inc. v. Connell*, 721 So.2d 1113, 1117 (Miss. 1998). Further, if the defendant "merely states what is believed, leaving the decision to prosecute entirely to the [] discretion of the officer, or if the officer[] makes an independent investigation," then the defendant "is not regarded as having instigated the proceeding." *Id.* (quoting W. Page Keeton et al., Prosser and Keeton, on the Law of Torts § 119 at 872-73 (5th ed. 1984)). In determining whether a defendant instigated the proceeding, the court considers whether the defendant

submitted an affidavit supporting arrest and the extent to which the defendant influenced the arresting officer and district attorney. *Cardenas v. Maslon*, 93 F. Supp. 3d 557, 569 (N.D. Miss. 2015).

Turning to the case at bar, the only evidence produced with respect to Defendant Caesars is email correspondence from Caesars to Bally advising Bally that Arizona had initiated civil forfeiture proceedings against Binning. The email was completely unrelated to the underlying Mississippi prosecution. Further, this email was sent months after the warrant for Binning's arrest had been issued and, therefore, could not possibly have encouraged the institution of proceedings against Binning. Binning has put forth no evidence showing that MGC, Gross, or the district attorney were aware of this correspondence. Moreover, Binning confirmed in his deposition testimony that he has no personal knowledge of any communication between Caesars and the prosecuting authorities in the underlying proceedings.

As to Defendant Bally, the record contains a single Summary of Findings sent by Bally to MGC one month after the warrant for Binning's arrest had been issued. Logic dictates that this report could not have caused the underlying prosecution as it was sent after the proceedings were initiated. Furthermore, the report merely advised that one of the causes of the unusually high payouts was a coding error which could be exploited. Nowhere in this report does Bally reference illegal activity nor identify Binning. Additionally, Binning testified during his deposition that he was unaware of any other communications between Bally and the prosecuting authorities.

Lastly, it is undisputed that Agent Gross conducted her own independent investigation before making the decision to submit an affidavit for Binning's arrest. For these reasons, the court agrees that Binning cannot prove that Defendants Caesars or Bally instigated the

underlying proceedings against him. Accordingly, the court finds that Binning's claim for malicious prosecution against Caesars and Bally is without merit.

Even assuming, arguendo, that Binning could prove that Defendants instigated the underlying prosecution, the court finds that Binning has failed to establish "malice in instituting the proceedings" as to all Defendants. "[M]alice in the law of malicious prosecution . . . connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice." *Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991) (citing *Benjamin v. Hooper Electronic Supply Co.*, 568 So.2d 1182 (Miss. 1990); *Royal Oil Co., Inc. v. Wells*, 500 So.2d 439 (Miss. 1986); *Owens v. Kroger Co.*, 430 So.2d 843 (Miss. 1983); *State Life Insurance Co. of Indianapolis v. Hardy*, 195 So. 708 (Miss. 1940)).

Although a mere assertion of malice would be insufficient at this stage, Binning's response lacks even a conclusory allegation that the defendants' acted maliciously. More importantly, the record is completely devoid of evidence suggesting that the prosecution against Binning was instituted for any reason other than that of a desire to bring an alleged offender to justice. Consequently, the court finds that Binning's malicious prosecution claim against all Defendants should be dismissed.

Dismissal of Binning's state-law claim is further necessitated by his failure to demonstrate "want of probable cause for the proceedings." Under Mississippi law, the return of an indictment is prima facie proof of probable cause. *Delaney v. Mississippi Dept. of Public Safety*, 2013 WL 286365 * 11 (S.D. Miss. Jan. 24, 2013). The plaintiff must produce evidence demonstrating either fraud or other improprieties in his prosecution to overcome this prima facie proof. *Id.* As previously discussed, an indictment against Binning was returned and he has neither alleged nor produced evidence demonstrating any impropriety in the underlying prosecution.

The court lastly notes that in his response, Binning contends that he may produce certain evidence at trial to combat Defendants' arguments for summary judgment. Yet, "[a]llegations that one 'might could' show certain facts at trial are simply insufficient" to defeat summary judgment. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 403 (5th Cir. 1979). A party "cannot successfully defeat a summary judgment motion by unsworn statements or the suggestion that proof might be forthcoming at trial." *Pope v. Mississippi Real Estate Com'n*, 695 F. Supp. 253, 263 (N.D. Miss. 1988) (citing *Ogelsby v. Terminal Transport Co., Inc.*, 543 F.2d 1111, 1112 (5th Cir. 1976)).

<u>Conclusion</u>

Based on the foregoing discussion, the court finds that the defendants' motions for summary judgment are well-taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 4th day of January, 2018.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**